UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LALITHA PASEM, *et al.*,<br><br>           Plaintiffs,<br><br>         v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>           Defendant. | Case No. 20-cv-344 (CRC) |

## MEMORANDUM OPINION

      To ensure that American companies are not faced with a shortage of skilled or high-level employees, our immigration laws include several opportunities for employers to bring foreign workers into the United States as nonimmigrant employees. The dependents of these employees may derivatively obtain nonimmigrant status and work authorization to help remove some of the financial impediments of moving to the United States. Plaintiffs are 95 dependents of primary visa holders who believe that the United States Citizenship and Immigration Services ("USCIS") has unreasonably delayed the adjudication of their applications to extend their derivative visas. USCIS contends that the wait times for these plaintiffs have been reasonable but argues that the Court should not reach that question because plaintiffs' claims should not be joined in a single lawsuit and would be best heard elsewhere.

      Because determining whether USCIS has unreasonably delayed the adjudication of plaintiffs' visa applications depends on myriad individualized factors, evidence of which is primarily located in the districts where the USCIS service centers that are processing the applications are located, the Court will exercise its discretion to sever the claims into separate actions—one for each service center—and then transfer them to the districts encompassing those

service centers.  Before doing so, however, the Court will dismiss as moot the claims of each plaintiff whose visa application has been adjudicated during the pendency of this lawsuit.

## I.     Background

American employers in a "specialty occupation" may apply for nonimmigrant visas and work authorization for skilled foreign workers ("H1-B visa").  8 U.S.C. § 1101(a)(15)(H)(i)(b).  Employers may pay a fee to jump the line and obtain premium processing of an H1-B petition, for which USCIS guarantees adjudication within 15 days.  8 C.F.R. § 103.7(e) (Jan. 1, 2020).  The employee's spouse and children may derivatively apply for nonimmigrant status to live in the United States ("H-4 status"), 8 U.S.C. § 1101(a)(15)(H), and for work authorization, 8 C.F.R. § 214.2(h)(9)(iv) (Jan. 1, 2020).  Similarly, employers may apply to bring their current managers, executives, or employees with specialized knowledge into the United States ("L-1 visas").  8 U.S.C. § 1101(a)(15)(L).  Congress has authorized the dependents of L-1 visa holders to live and work in the United States as well ("L-2 status").  Id. §§ 1101(a)(15)(L), 1184(c)(2)(E).

To obtain authorization to live in the United States, individuals seeking H-4, L-2, or one of the other twenty enumerated, nonimmigrant statuses must submit Form I-539 to USCIS.  See Form I-539 Instructions, at 4–13 (Oct. 15, 2019), Def.'s Reply Exh. 1 (listing the 22 statuses that must use Form I-539).  For work authorization, they must separately file Form I-765.  These authorizations may last for the duration of the primary visa (i.e., the H1-B and L-1 visa their family member has obtained) and individuals must apply to extend their status prior to its expiration using these same forms.  See, e.g., 8 C.F.R. § 214.2(h)(9)(iv).  Unlike for the primary H1-B and L-1 visas, work authorization is not automatically extended during the pendency of an I-539 application to extend a derivative visa.  8 C.F.R. § 274a.12(b)(20).  That means if a visa expires while the holder is waiting for USCIS to adjudicate their extension request, they

immediately lose the right to be employed, to hold a valid driver's license, and to receive other benefits that stem from having a valid visa.

Prior to March 2019, H-4 and L-2 applications were adjudicated as a single package alongside the primary H1-B or L-1 applications. Roller Decl. ¶ 7. USCIS expedited any derivative applications if an employer had paid for expedited processing of the primary visa. Id. In March 2019, however, USCIS decided that applicants filing Form I-539 must provide biometric information for screening. Id. ¶ 8; USCIS Teleconference on Revised Form I-539 and New Form I-539A, Pls.' Opp. Exh. 12, ECF No. 12-12; see also 8 C.F.R. § 103.2(b)(9) (permitting USCIS to require any applicant to appear for the collection of biometric information). This new biometric screening has predictably extended the amount of time it takes USCIS to adjudicate the applications and has prevented USCIS from continuing to consider the derivative visas concurrently with the primary applications, including those that were expedited. Roller Decl. ¶ 13.

Plaintiffs—95 individuals who have applied to extend their H-4 or L-2 nonimmigrant statuses and/or work authorizations—claim that USCIS has unreasonably delayed the adjudication of their applications and that the delay constitutes arbitrary and capricious agency action in violation of § 706 of the Administrative Procedure Act. Am. Compl. ¶¶ 437–472 (Causes of Action). Each plaintiff has submitted either Form I-539 (for nonimmigrant status), Form I-765 (for employment authorization), or both to one of four USCIS services centers: the Nebraska Service Center in Lincoln, Nebraska, which is in the District of Nebraska; the Texas Service Center in Dallas, Texas, which is in the Northern District of Texas; the Vermont Service Center in Saint Albans, Vermont, which is in the District of Vermont; or the California Service Center in Laguna Niguel, California, which is in the Central District of California. See Roller

3


Decl. ¶ 1; Moussa Decl. ¶ 1; Kernan Decl. ¶ 1; Peace Decl. ¶ 1.  Their applications had not been adjudicated as of the date this suit was filed, although many have been decided during the pendency of the action.  See Def.'s Mot. 16 (noting 26 plaintiffs' applications had been adjudicated by the time USCIS filed its motion); Pls.' Opp. 10 (noting that only 43 plaintiffs retained their claims by the time they filed their opposition); Def.s' Reply 5 (noting 10 additional plaintiffs' applications had been adjudicated by the time it filed its reply).[1]  Upon filing the suit, plaintiffs had been waiting between 32 to 366 days for Form I-539 applications and between 32 to 507 days for Form I-765 applications.  Compl. tbls.1–2.[2]  Citing economic hardship, plaintiffs filed a motion for preliminary injunction seeking speedier resolution.  USCIS responded with an omnibus motion to sever and transfer these claims to the judicial districts where the service centers adjudicating plaintiffs' individual applications sit, to dismiss plaintiffs with already-adjudicated applications as moot, and for summary judgment on the ground that the current wait times are not unreasonable.

**II.    Transfer**

USCIS seeks to transfer the claims of the 95 plaintiffs to other, more appropriate judicial districts, namely the districts where the USCIS service centers that are adjudicating the plaintiffs visa applications are located.  A court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," as long as the transferee district is one where the case "might have been brought."  28 U.S.C. § 1404(a).  The moving

---

[1] Even more have been adjudicated between the reply and the filing of this opinion.  See App'x A, supra.

[2] Those still awaiting adjudication as of the date of this opinion have been waiting between 128 and 240 days for I-539 applications and between 128 and 296 days for I-765 applications.  App'x B, supra.

party bears the burden to establish both that (1) the plaintiff *could* have brought the action in the proposed transferee court and (2) that the action *should* have been brought there. Gyau v. Sessions, No. 18-cv-0407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018) (citing Van Dusen v. Barrack, 376 U.S. 612, 616–43 (1964)).

First, plaintiffs *could* have brought these cases in the judicial districts where the service centers are located. Suits against a federal officer, employee, or agency may be brought in any judicial district where a defendant resides, where "a substantial part of the events or omissions giving rise to the claim occurred," or—if no real property is involved—"where the plaintiff resides." 28 U.S.C. § 1391(e)(1). In APA cases, the underlying claim typically arises "where the decisionmaking process occur[s]." Gyau v. Sessions, No. 18-cv-407, 2018 WL 4964502, at *1 (D.D.C. Oct. 15, 2018). The decisonmaking process for adjudicating plaintiffs' visa applications occurs in USCIS service centers around the country, and any delay—that is the "omissions giving rise to the claim"—has occurred in those districts. Therefore, plaintiffs could have brought their claims in those districts. See, e.g., McAfee, LLC v. USCIS, 19-cv-2981, 2019 WL 6051559, at *1 (Nov. 15, 2019) (finding that the plaintiff could have brought its action challenging the adjudication of its H-1B petition in the Central District of California because the petition was processed by USCIS's California Service Center).

Plaintiffs do not dispute that they could have brought these claims in the districts where the USCIS service centers are. They argue only that venue is proper in the District of Columbia, not that it is improper elsewhere. Pls.' Opp. 15. But a court may transfer venue to a more convenient district, even if venue is proper in the district in which the plaintiff brought the suit. Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49 (2013) ("[Section] 1404(a) does not condition transfer on the initial forum's being 'wrong.' . . . [I]t permits transfer to any

5

district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation."). Indeed, "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

Second, the Court finds that the plaintiffs *should* have brought their claims in those districts. This inquiry "calls on district courts to weigh in the balance a number of case-specific factors" that guide an inquiry into whether transfer is in the public interest and in the private interest of the parties. Stewart Org., 487 U.S. at 29. "The public interests include the transferee court's familiarity with the governing laws, each court's relative congestion, and the local interest in resolving the controversy." Gyau, 2018 WL 4964502, at *1. "The private interests include the plaintiff's preferred forum, the defendant's preferred forum, where the claim arose, and the convenience to the parties, to the witnesses, and to the evidence." Id.

Of the public interest factors, two are in equipoise and one leans slightly toward transfer. First, federal district courts are "equally familiar" with federal law, so that factor does not tip the scale in either direction. Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 20 (D.D.C. 2008). Second, none of the various districts at issue here have such enormous backlogs and congestion that transfer would not be in the public interest. See United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf (last accessed May 15, 2020). The only outlier is the Northern District of Texas, which currently has over 8,000 cases that are greater than three years old (which is 62% of its caseload). Id. Even so, the average time for that district to resolve a case is 6.7 months, merely a month longer than

the average in this district.  Id.  Finally, the third public interest factor weighs in favor of transfer because "courts have 'a local interest in having localized controversies decided at home,'" including even "controversies requiring judicial review of an administrative decision." Gyau, 2018 WL 4964502, at *2 (internal quotations omitted).  None of the affected employers and none of these plaintiffs are located in the District of Columbia and all the plaintiffs' applications are being adjudicated elsewhere.  The districts that encompass these service centers, therefore, have a greater interest in deciding these claims than this Court.

The private interest factors also support transfer.  First, USCIS prefers the districts where the service centers are, presumably because those districts are where the claims arose.  Each plaintiff filed their application in those service centers, and any delay occurred there.  Nevertheless, plaintiffs contend that venue should lie in this district because the biometric screening policy—which "directly affect[s]" each of the plaintiffs—was instituted by the USCIS's Senior Policy Council here in the District of Columbia.[3]  Pls.' Opp. 13.  To plaintiffs, the service centers are simply "the conduit through which the agency's policies are being executed from a central location here in the District of Columbia." Pl.'s Opp. 15.  But that is precisely why venue is more appropriate in the districts housing those centers.  When "the *implementation* of [a] policy is at issue, and [] that implementation took place [in a different judicial district], venue is more appropriately laid in [that other district]." Huskey v. Quinlan,

---

[3] USCIS warns that the Court "must 'guard against the danger that a plaintiff might manufacture venue . . . [b]y naming high government officials as defendants . . . [to] bring a suit here that properly should be pursued elsewhere.'" Def.s' Mot. 9 (quoting Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)).  But plaintiffs' venue argument is not based solely on the fact that a senior agency official works in Washington, D.C.  In fact, plaintiffs have not named any high government officials as defendants in an attempt to bootstrap venue.  Instead, their argument is based on a central policy that has affected each plaintiff and that, presumably, was formulated in Washington.

7

785 F. Supp. 4, 7 (D.D.C. 1992) (emphasis in original) (citing Jones v. United States, 560 F. Supp. 875, 876 (D.D.C. 1983)). But plaintiffs have not challenged the legality of the biometric screening policy; their quarrel is with its implementation and effect on dozens of plaintiffs who have applied for visas across the country. Although the policy affects every plaintiff, it does so in different ways, and the evidence of how it has affected each plaintiff is best available at the service center where they submitted their applications. See also id. ("Even assuming, *arguendo*, that a true national policy issue was before this Court, Plaintiff raises claims 'related to his particular circumstances' which may likely 'require[] evidence from himself and other persons better available in [the district where the policy was implemented].'" (quoting Starnes v. McGuire, 512 F.2d 918, 925 (D.C. Cir. 1974))). Plaintiffs have also indicated an intention to take discovery about USCIS's processing time. Assuming that such discovery would be necessary, each center has its own "location-specific processing times as a result of unique workload and staffing considerations at that center." Def.'s Reply 3. The USCIS personnel who best know the individual causes of any delays in processing times will also be available at those centers; thus, the convenience to witnesses also tips the scales in favor of transfer. See W. Watersheds Project v. Pool, 942 F. Supp. 2d 93, 97–103 (D.D.C. 2013) (transferring case alleging unlawful delays to the district in which the field office responsible for the relevant decision was located).

      The only private interest factor that counsels in favor of retaining venue here is that the District of Columbia is the plaintiffs' preferred forum, which "is typically entitled to deference." Sallyport Global Servs., Ltd. v. Arken Int'l, LLC, 78 F. Supp. 3d 369, 373 (D.D.C. 2015). However, "such deference is minimized when the forum chosen is not the plaintiff's home forum," id., and no plaintiff resides in the District of Columbia. In addition, deference to the

plaintiff's choice of forum can be overcome when "the balance of convenience is strongly in favor of the defendant."  Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).  The other private interest factors weigh strongly in favor of transfer, and the plaintiffs' preference to adjudicate this case in the District of Columbia is not heavy enough to tip the scales back.

Accordingly, the Court finds that the private- and public-interest factors counsel in favor of transfer.  But before the Court can transfer any of the claims, it must "first sever [them] into separate cases."  Pinson v. Dep't of Justice, 74 F. Supp. 3d 283, 288 (D.D.C. 2014) (citing Spaeth v. Michigan State Univ. Coll. of Law, 845 F. Supp. 2d 48, 57 n.13 (D.D.C.2012) (severing claims prior to transferring, per § 1404(a))).  A court may "sever any claim against any party."  Fed. R. Civ. P. 21.  "Although Rule 21 deals primarily with misjoinder or nonjoinder of parties, this Rule also 'authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance.'"  Am. Oversight v. Dep't Veterans Affairs, 326 F.R.D. 23, 27 (D.D.C. 2018) (quoting Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968)); see also M.K. v. Tenet, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The determination of a motion to sever is within the discretion of the trial court.").  Courts have discretion to sever parties to effectuate transfer for judicial economy and convenience of the parties.  See Pinson, 74 F. Supp. at 289 ("Even if the requirements of Rule 20(a) are met, the final decision to sever claims remains with the court.").  Because transfer is appropriate here, the Court will exercise its discretion to sever these claims into separate actions based on the service

center where plaintiffs' applications are pending and transfer those cases to the judicial district where each service center is located.[4]

### III.     Dismissal of Moot Claims Prior to Transfer

When warranted, courts in this district routinely dismiss individual claims prior to transferring a case. See, e.g., Stevenson v. Delta Airlines, Inc., 251 F. Supp. 3d 265 (D.D.C. 2017) (dismissing some claims for failure to state a claim, others as time barred, and transferring the remaining claims to a more appropriate district); Scurlock v. Lappin, 870 F. Supp. 2d 116, 123 (D.D.C. 2012) (dismissing some claims for lack of subject matter jurisdiction before transferring the remaining claims); Huskey, 785 F. Supp. at 7 (same).

The parties agree that many of the plaintiffs' claims are now moot because USCIS has adjudicated their visa applications during the pendency of this lawsuit. Def.'s Mot. 16; Pl.'s Opp. 10 n.7; Def.'s Reply 5. Claims that have become moot must be dismissed for lack of subject matter jurisdiction. Mittleman v. Postal Regulatory Comm'n, 757 F.3d 300, 303 (D.C. Cir. 2014); Fed. R. Civ. P. 12(b)(1). In deciding whether a claim has become moot, a court may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Relying on the evidence submitted by USCIS, see Def.'s Reply, Updated App'x A (table of plaintiffs whose applications have been adjudicated) and using USCIS' online case-status tool,[5] the Court finds that the claims of plaintiffs whose applications have been adjudicated are moot and will thus dismiss those plaintiffs' claims in lieu of

---

[4] The parties vigorously dispute whether plaintiffs are properly joined under Rule 20(a). But the Court need not decide that issue because it will exercise its discretion to sever the plaintiffs to effectuate transfer regardless of whether they are all properly joined.

[5] https://egov.uscis.gov/casestatus/landing.do

transferring them.  See App'x A (listing the mooted claims); see also App'x B (listing remaining claims, by service center).  To ensure the correct plaintiffs are dismissed, the Court will order the Government to provide a report confirming the Court's determinations of which claims have been mooted since it filed its reply brief.

### IV.     Conclusion

For the foregoing reasons, the Court will grant USCIS's motion to dismiss as moot the claims of plaintiffs whose visa applications have been adjudicated as of the date of this opinion.  The Court will then sever the remaining plaintiffs' claims into separate actions by service center and transfer those actions to the judicial district where each service center is located.  First, however, the Court will direct the Government to file a report by May 20, 2020 confirming which claims are moot and which remain.  The Court will hold in abeyance the order that shall accompany this memorandum opinion dismissing the moot claims and severing/transferring the remaining claims until then.

<div style="text-align:right">

_____
CHRISTOPHER R. COOPER
United States District Judge

</div>

Date:  May 15, 2020